## IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
## _12_ DIVISION _____ CIRCUIT

Shirley Johnson as Special Administratrix
of the Estate of Evon Williams, and on behalf
of the wrongful death beneficiaries of Evon Williams                    PLAINTIFF

vs.                                    CASE NO. CV-2015-0101-6

Courtyard Rehabilitation and Health Center, LLC; Union Assets, LLC;
SA ElderCare, LLC; JEJ Investments, LLC; Ross M. Ponthie;
Mark Thompson; John Ponthie; Kimberly Hamilton in her capacity
as Administrator of Courtyard Rehabilitation and Health Center, LLC;
and John Doe I-V                                    DEFENDANT

### COMPLAINT

COMES NOW, the Plaintiff, Shirley Johnson as Special Administratrix of the Estate of

Evon Williams, deceased, and on behalf of the wrongful death beneficiaries of Evon Williams,

by and through her attorneys, Ludwig Law Firm, PLC, and for her causes of action against

Defendants, states as follows:

### Jurisdictional Statement

1.      Shirley Johnson is the Special Administratrix of the Estate of Evon Williams as

shown by the January 12, 2015 Letter of Special Administration which is attached hereto as

**Exhibit A**, and brings this action on behalf of Evon Williams.

2.      Shirley Johnson is Evon Williams' sister. Shirley Johnson is an Arkansas citizen

and resides at 5789 Smackover Hwy, Smackover, Union County, Arkansas 71762.

3.      Evon Williams, deceased, was a resident of Courtyard Rehabilitation and Health

Center, LLC (sometimes referred to as "facility"), a nursing home located at 2415 W. Hillsboro,

El Dorado, Arkansas 71730, from approximately March 2007, until her death on March 14,

2013. Evon Williams was an Arkansas citizen.

FILED
3/12/15 @ 2:43 pm
CHERYL COCHRAN - WILSON, CLERK
BY _____ D.C.

1 of 29

4.    Defendant Courtyard Rehabilitation and Health Center, LLC is an Arkansas limited liability company and was authorized to do business and did business in the State of Arkansas by operating, managing, owning, controlling, and/or providing services and holding the license for Courtyard Rehabilitation and Health Center, LLC.  At all times material to this action, Courtyard Rehabilitation and Health Center, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for Courtyard Rehabilitation and Health Center, LLC is Amy Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

5.    Defendant Union Assets, LLC is an Arkansas limited liability company and was authorized to do business and did business in the State of Arkansas by operating, managing, owning, controlling, and/or providing services for Courtyard Rehabilitation and Health Center, LLC. The causes of action detailed in this complaint arise from the business conducted within this State by Union Assets, LLC's operation, management, ownership, control, and/or provision of services to the facility during the residency of Evon Williams.  At all times material to this action, Union Assets, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for Union Assets, LLC is Amy Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

6.    Defendant SA ElderCare, LLC is an Arkansas limited liability company and was authorized to do business and did business in the State of Arkansas by operating, managing, owning, controlling, and/or providing services for Courtyard Rehabilitation and Health Center, LLC. With its members including: Davis Medical Properties, LLC, Dr. Richard Keith Davis, Jr., Preeminent Properties of Arkansas, LLC, Gregg Massanelli, and Greg Smart. At all times

material to this action, SA ElderCare, LLC was a control person as defined in Ark. Code Ann §4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for SA ElderCare, LLC is Gerald Crochet, 10201 W. Markham, Suite 213, Little Rock, Arkansas 72205.

7.      Defendant JEJ Investments, LLC is an Arkansas limited liability company and was authorized to do business and did business in the State of Arkansas by operating, managing, owning, controlling, and/or providing services for Courtyard Rehabilitation and Health Center, LLC. At all times material to this action, JEJ Investments, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process for JEJ Investments, LLC is Amy Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

8.      Defendant Ross M. Ponthie is a citizen and resident of Louisiana. At certain times material to this action, Ross M. Ponthie was an owner and the Incorporator/Organizer of the licensee Courtyard Rehabilitation and Health Center, LLC. Upon information and belief, Ross M. Ponthie is an owner and/or member of separate Defendant Courtyard Rehabilitation and Health Center, LLC. Ross M. Ponthie was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. Ross M. Ponthie's systematic and continuous contacts with the operations of Courtyard Rehabilitation and Health Center, LLC, specifically, and the State of Arkansas, generally, render him subject to the personal jurisdiction of this Court pursuant to Ark. Code Ann. § 16-4-101. Ross M. Ponthie may be served with process at his last known address: 6110 Bayou Robert Drive, Alexandria, Louisiana 71301.

9.    Defendant Mark Thompson is a citizen and resident of Louisiana. At certain times material to this action, Mark Thompson was an owner and the Incorporator/Organizer of the licensee Courtyard Rehabilitation and Health Center, LLC. Upon information and belief, Mark Thompson is an owner and/or member of separate Defendant Courtyard Rehabilitation and Health Center, LLC. Mark Thompson was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. Mark Thompson's systematic and continuous contacts with the operations of Courtyard Rehabilitation and Health Center, LLC, specifically, and the State of Arkansas, generally, render him subject to the personal jurisdiction of this Court pursuant to Ark. Code Ann. § 16-4-101. Mark Thompson may be served with process at 1401 Texas Avenue, Suite D, Alexandria, Louisiana 71303.

10.    Defendant John Ponthie is a citizen and resident of Louisiana. At certain times material to this action, John Ponthie was an owner of Courtyard Rehabilitation and Health Center, LLC. Upon information and belief, John Ponthie is an owner and/or member of separate Defendants JEJ Investments, LLC and Courtyard Rehabilitation and Health Center, LLC, and was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. John Ponthie's systematic and continuous contacts with the operations of Courtyard Rehabilitation and Health Center, LLC, specifically, and the State of Arkansas, generally, render him subject to the personal jurisdiction of this Court pursuant to Ark. Code Ann. § 16-4-101. John Ponthie may be served with process at 2723 Alvamar Drive, Shreveport, Louisiana 71106.

11.    Upon information and belief, Defendant Kimberly Hamilton was the administrator of Courtyard Rehabilitation and Health Center, LLC during the residency of Evon Williams. The causes of action made the basis of this suit arise out of Kimberly Hamilton's

administration of Courtyard Rehabilitation and Health Center, LLC during the residency of Evon Williams. Defendant Kimberly Hamilton may be served with process at her last known address: 617 Ouachita 43, Camden, Arkansas 71701.

12.     Plaintiff is listing five John Doe's as potential defendants. Kyle P. Ludwig, the attorney for the Plaintiffs, will file an Affidavit as to Unknown Tortfeasors at the time of the filing of this Complaint. Plaintiff reserves the right to file as to additional parties, and serve those additional parties, who may be additional defendants, pursuant to Ark. Code Ann. § 16-56-125 and other statutes dealing with the John Doe procedure in this state. Plaintiff alleges that there may be additional defendants, described herein as John Doe's I through V, who had authority to affect, make, enforce, change, or otherwise implement policies, procedures, budgets, staffing or other aspects of the nursing home including, but not limited to, those which relate or refer to any of the allegations in this Complaint.

13.     Whenever the term "Nursing Home Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants, including but not limited to the following: Courtyard Rehabilitation and Health Center, LLC; Union Assets, LLC; SA ElderCare, LLC; JEJ Investments, LLC; Ross M. Ponthie; Mark Thompson; John Ponthie; and Kimberly Hamilton.

14.     Whenever the term "Administrator Defendant" is utilized within this suit, such term refers to Kimberly Hamilton.

15.     Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

16.     Jurisdiction and venue are proper in this Court.

## Factual Allegations

17.    Evon Williams was a resident of Courtyard Rehabilitation and Health Center, LLC from approximately March 2007 until March 14, 2013.

18.    Defendants were aware of Evon Williams' medical condition and the care she required when they represented that they could adequately care for her needs.

19.    In an effort to ensure that Evon Williams and other residents whose care was partially funded by the government were placed at Courtyard Rehabilitation and Health Center, LLC, Defendants held themselves out to the Arkansas Department of Human Services (DHS) and the public at large as being:

a)    Skilled in the performance of nursing, rehabilitative and other medical support services;

b)    Properly staffed, supervised and equipped to meet the total needs of their nursing home residents;

c)    Able to specifically meet the total nursing home, medical and physical therapy needs of Evon Williams and other residents like her; and

d)    Licensed by DHS and complying on a continual basis with all rules, regulations and standards established for nursing homes.

20.    The Defendants were on notice and aware of problems with resident care, including those failures and deficiencies that caused injury to Evon Williams, at Courtyard Rehabilitation and Health Center, LLC but did nothing to correct those problems.

21.    Under state and federal law, the governing body of a nursing home is composed of individuals or a group in whom the ultimate authority and legal responsibility is vested for conduct of the nursing home.  *See* Ark. Office of Long Term Care R.& Regs. § 100.  All long-term care facilities must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding

the management and operation of the facility. *See* 42 C.F.R. § 483.75(d)(1). The governing body has a legal duty to adopt effective patient care policies, administrative policies and by-laws governing the operation of the facility in accordance with legal requirements of state and federal law. *See* Ark. Office of Long Term Care R. & Regs. § 301.1. Upon information and belief, Kimberly Hamilton was a member of the governing body of Courtyard Rehabilitation and Health Center, LLC and was legally responsible for establishing and implementing policies regarding management and operation of the facility and for retaining the services of a qualified administrator, in whom the ultimate authority and legal responsibility was vested for patient care in the nursing home.

22.    Defendants failed to discharge their obligations of care to Evon Williams with a conscious disregard for her rights and safety. At all times mentioned herein, Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Evon Williams, as more fully set forth below. Defendants knew that their facility could not provide the minimum standard of care to the weak and vulnerable residents of Courtyard Rehabilitation and Health Center, LLC. The severity of the recurrent negligence inflicted upon Evon Williams while a resident of the facility accelerated the deterioration of her health and physical condition and resulted in physical and emotional injuries. While a resident at Courtyard Rehabilitation and Health Center, LLC, Evon Williams sustained multiple injuries including, but not limited to, the following:

       a)  Yeast Infections;

       b)  UTI's;

       c)  PEG Tube errors;

d)  Medication errors;

e)  Dehydration resulting in multiple hospital trips; and

f)  Death.

23.     The injuries sustained by Evon Williams, as well as the conduct specified below, caused her to lose her personal dignity and to suffer extreme and unnecessary pain, anguish, and emotional trauma.

24.     Defendants controlled the operation, planning, management and quality control of Courtyard Rehabilitation and Health Center, LLC.  The authority exercised over the nursing facility included, but was not limited to, budgeting, marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used by Courtyard Rehabilitation and Health Center, LLC, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

25.     Defendants operated and managed Courtyard Rehabilitation and Health Center, LLC so as to maximize profits by reducing staffing levels below that needed to provide adequate care to residents that would comply with federal and state regulations governing skilled nursing facilities.  Thus, Defendants knowingly and/or with reckless disregard for the consequences of their actions caused staffing levels at their facility to be set so that the personnel on duty at any given time could not reasonably tend to the needs of their assigned residents.  Upon information and belief, Defendants knowingly established staffing levels that created recklessly high nurse/resident ratios and disregarded patient acuity levels as well as the minimal time required to perform essential functions.  These acts of malfeasance directly caused injury to Evon Williams

and other residents of Courtyard Rehabilitation and Health Center, LLC and were known to Defendants.

26.    The acts and omissions of Defendants were motivated by a desire to increase the profitability by reducing expenditures for needed staff, training, supervision and care to levels that would predictably lead to severe injury.

27.    Plaintiff alleges that, during Evon Williams' residency at Courtyard Rehabilitation and Health Center, LLC, Evon Williams was under the care, supervision and treatment of Defendants and that the injuries complained of were proximately caused by the acts and omissions of the Defendants.

28.    Defendants were vicariously liable for the acts and omissions of all persons or entities under their control, either directly or indirectly, including employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools causing or contributing to the injuries of Evon Williams.

## CAUSES OF ACTION AGAINST THE NURSING HOME DEFENDANTS

### Count One: Negligence

29.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

30.    The Nursing Home Defendants owed a non-delegable duty to residents, including Evon Williams, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

31.    The Nursing Home Defendants owed a non-delegable duty to their residents, including Evon Williams, to exercise reasonable care in providing care and services in a safe and beneficial manner.

32.     The Nursing Home Defendants owed a non-delegable duty to their residents, including Evon Williams, to hire, train and supervise employees to deliver care and services to residents in a safe and beneficial manner.

33.     The Nursing Home Defendants owed a non-delegable duty to residents, including Evon Williams, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

34.     The Nursing Home Defendants owed a non-delegable duty to assist all residents, including Evon Williams, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

35.     The Nursing Home Defendants breached these duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse and neglect of Evon Williams. The negligence of Defendants includes, but is not limited to, the following acts and omissions:

a)     The failure to ensure that abuse prevention policies were developed and implemented to include analysis of the physical environment and the assessment, care planning and monitoring of residents with needs and behaviors that might lead to conflict;

b)     The failure to ensure that Evon Williams attained and maintained her highest level of physical, mental, and psychosocial well-being;

c)     The failure to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical and psychosocial needs similar to those of Evon Williams;

d)     The failure to increase the number of nursing personnel to ensure that Evon Williams received timely and accurate care assessments, proper treatment, medication and diet;

e)     The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Evon Williams throughout her residency;

f)    The failure to increase the number of nursing personnel at the facility to ensure that Evon Williams:

    1)    Received timely and accurate care assessments;
    2)    Received proper treatment, medication, and diet; and
    3)    Was protected from accidental injuries by the correct use of ordered and reasonable safety measures.

g)    The failure to adequately screen, evaluate, check references, test for competence, and use ordinary care in selecting nursing personnel to work at the facility;

h)    The creation of and/or the failure or refusal to identify and correct the injuries, conditions, and circumstances described in paragraph 22 and exhibited by Evon Williams;

i)    The failure to terminate employees at the facility assigned to Evon Williams who were known to be careless, incompetent and unwilling to comply with the policies and procedures of the facility and the rules and regulations promulgated by the Arkansas Department of Human Services and the Office of Long Term Care;

j)    The failure to assign nursing personnel at the facility duties consistent with their education and experience based on:

    1)    Evon Williams' medical history and condition, nursing and rehabilitative needs;
    2)    The characteristics of the resident population residing in the area of the facility where Evon Williams was a resident; and,
    3)    The nursing skills needed to provide care to such resident population.

k)    The failure by the members of the governing body of the facility to discharge their legal and lawful obligation by (1) ensuring that the rules and regulations designed to protect the health and safety of residents, such as Evon Williams, as promulgated by the Arkansas Department of Human Services and the Arkansas Office of Long Term Care, were consistently complied with on an ongoing basis and (2) ensuring appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

l) The failure to adopt adequate guidelines, policies, and procedures of the facility for documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of the facility, an employee of the facility or any interested person;

m) The failure to maintain medical records on Evon Williams in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible and systematically organized with respect to diagnosis, treatment and assessment and establishment of appropriate care plans of care and treatment; and

n) The failure to properly in-service and orient employees to pertinent patient care needs to maintain the safety of residents.

36.    A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Evon Williams.

37.    The Nursing Home Defendants further breached their duty of care to Evon Williams by violating certain laws and regulations in force in the State of Arkansas at the time of the occurrences discussed herein including, but not limited to, the following:

a) By failing to comply with rules and regulations promulgated by the Arkansas Department of Human Services, Division of Social Services, Office of Long Term Care, pursuant to authority expressly conferred by Act 28 of 1979 (Ark. Code Ann. § 20-10-202, *et seq.*) and published in the Long Term Care (LTC) Provider manual on April 8, 1984, and the supplements thereto, and federal minimum standards imposed by the United States Department of Health and Human Services;

b) By failing to ensure that abuse prevention policies were developed and implemented to include analyses of the physical environment and the assessment, care planning and monitoring of residents with needs and behaviors that might lead to conflict;

c)      By failing to provide the necessary care and services to attain or maintain the highest practicable, physical, mental and psychosocial well-being of Evon Williams in accordance with the comprehensive assessment and plan of care;

d)      By failing to ensure a nursing care plan based on Evon Williams' problems and needs were established that contained measurable objectives and timetables to meet her medical, nursing, and mental and psychosocial needs as identified in her comprehensive assessment;

e)      By failing to review and revise Evon Williams nursing care plan when her needs changed;

f)      By failing to treat Evon Williams courteously, fairly and with the fullest measure of dignity;

g)      By failing to provide sufficient nursing staff and nursing personnel to ensure that Evon Williams attained and maintained her highest practicable physical, mental and psychosocial well-being;

h)      By failing to provide a safe environment;

i)      By failing to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident; and

j)      By criminally abusing and neglecting Evon Williams and by failing to report that abuse in violation of the Adult and Long-Term Care Facility Resident Maltreatment Act, Ark. Code Ann. §§ 12-12-1701 *et seq.*

38.    A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts of negligence on the part of the Nursing Home Defendants was a proximate cause of Evon Williams' injuries as more specifically described herein. Evon Williams suffered personal injury including pain and suffering, mental anguish and emotional distress.

39.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish and emotional distress in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### Count Two: Medical Malpractice

40.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

41.    The Nursing Home Defendants are either medical care providers as defined by Ark. Code Ann. § 16-114-201(2) and/or liable for medical care providers as defined by Ark. Code Ann. § 16-114-201(2).

42.    The Nursing Home Defendants owed a non-delegable duty to residents, including Evon Williams, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

43.    The Nursing Home Defendants owed a non-delegable duty to assist all residents, including Evon Williams, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

44.    The Nursing Home defendants failed to meet the applicable standards of care and violated their duty of care to Evon Williams through mistreatment, abuse and neglect. The Nursing Home Defendants failed to adequately supervise nurses and aides and failed to hire sufficient nurses and aides. As such, the nurses and aides were unable to provide Evon Williams

the requisite care, and as a result, negligent acts occurred as set forth herein. The medical negligence of Defendants includes, but is not limited to, the following acts and omissions:

    a)    The failure to ensure that Evon Williams received the following:

        1)    Timely and accurate care assessments;

        2)    Proper treatment, medication and diet;

        3)    Necessary supervision; and

        4)    Timely nursing and medical intervention due to a significant change in condition.

    b)    The failure to provide, implement, and ensure adequate nursing care plan revisions and modifications as the needs of Evon Williams changed;

    c)    The failure to provide, implement and ensure that an adequate nursing care plan for Evon Williams was followed by nursing personnel;

    d)    The failure to provide Evon Williams with adequate and appropriate nursing care, treatment, and medications;

    e)    The failure to ensure that Evon Williams was assessed in order to receive adequate and proper nutrition, fluids, and therapeutic diet; and

    f)    The failure to adequately and appropriately monitor Evon Williams and recognize significant changes in her health status.

45.    A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts of negligence on the part of the Nursing Home Defendants was a proximate cause of Evon Williams' injuries, which were foreseeable. Evon Williams suffered personal injury, including excruciating pain and suffering, mental anguish and emotional distress.

46.    The Nursing Home Defendants were negligent and reckless in breaching the duties owed to Evon Williams under the Medical Malpractice Act for the reasons specifically enumerated in this Complaint.

47.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, Evon Williams suffered injuries as described herein.  Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Nursing Home Defendants, including, but not limited to, medical expenses, pain and suffering, mental anguish and emotional distress in an amount exceeding that required for federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## Count Three: Breach of the Admission Agreement

48.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

49.    Before being admitted to Courtyard Rehabilitation and Health Center, LLC,  Evon Williams was required to enter into a Resident Admission Agreement, whereby the facility agreed to provide nursing and custodial care, necessary goods, services, and/or treatment to Evon Williams in exchange for valuable consideration.

50.    Evon Williams, or those acting on her behalf, did what the Agreement for Care required of her in that valuable consideration was paid for the goods, services, care and treatment, including personal or custodial care, and professional nursing care the Nursing Home Defendants promised to provide.

51.    The Nursing Home Defendants breached their contractual duties by failing to provide the care and services as described in the agreement, causing damage to Evon Williams.

52.     As a result, the Plaintiff is entitled to compensatory damages and consequential damages.

53.     Plaintiff is entitled to seek punitive damages for breach of contract, because the Nursing Home Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the admissions agreement would naturally and probably result in injury or damage, yet the Nursing Home Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

54.     Plaintiff, for good cause, is unable to attach a copy of the actual admissions agreement upon which this claim is based, because it is in the possession of the Nursing Home Defendants.

## Count Four: Violations of the Long-Term
## Care Facility Residents Rights Act

55.     Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

56.     Among the Nursing Home Defendants, the licensee(s) of Courtyard Rehabilitation and Health Center, LLC had a statutorily-mandated duty to provide Evon Williams with her basic, nursing home resident's rights as set forth in the Protection of Long-Term Care Facility Residents Act, Ark. Code Ann. §§ 20-10-1201 *et seq.*

57.     The Protection of Long-Term Care Facility Residents Act mandates the development, establishment, and enforcement of basic standards for the health, care, and treatment of persons in long-term care facilities; and mandates that the maintenance and operation of long-term care facilities will ensure safe, adequate, and appropriate care, treatment, and health of residents, like Evon Williams.

58.    The Protection of Long-Term Care Facility Residents Act mandates every licensed facility shall comply with all applicable standards and rules of the Office of Long-Term Care of the Arkansas Department of Human Services.

59.    The statutory duty imposed upon the facility licensee(s) to prevent deprivation or infringement of the resident's rights of Evon Williams was non-delegable.  Thus, among the Nursing Home Defendants, the licensee(s) is directly liable to Plaintiff for any deprivation and infringement of Evon Williams resident's rights occurring as a result of its own action or inaction, and as a result of the action or inaction of any other person or entity, including employees, agents, consultants, independent contractors and affiliated entities, whether in-house or outside entities, individuals, agencies or pools, as well as any deprivation and infringement of Evon Williams' resident's rights caused by the Nursing Home Defendants' policies, procedures, whether written or unwritten, and common practices.

60.    Any person or entity acting as an employee or agent of Courtyard Rehabilitation and Health Center, LLC assumed and undertook to perform the licensee's non-delegable and statutorily-mandated duty to provide Evon Williams nursing home resident's rights as set forth in Ark. Code Ann. §§ 20-10-1201 *et seq.* in the operation and management of Courtyard Rehabilitation and Health Center, LLC.

61.    Notwithstanding the responsibility of the licensee to protect and provide for these statutorily-mandated, nursing home resident's rights, the Nursing Home Defendants infringed upon, and Evon Williams was deprived of rights mandated by Ark. Code Ann. §§ 20-10-1201 *et seq.* including, but not limited to, the following:

      a)    The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for Evon Williams, with

established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

1) The right to receive adequate and appropriate custodial service, defined as care for Evon Williams which entailed observation of diet and sleeping habits and maintenance of a watchfulness over her general health, safety, and well-being; and

2) The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and Evon Williams or her designee or legal representative, which included a comprehensive assessment of the needs of Evon Williams, a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

b) The right to regular, consultative, and emergency services of physicians;

c) The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

d) The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of Evon Williams, and not directly furnished by the licensee;

e) The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f) The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g) The right to be free from mental and physical abuse, and from physical and chemical restraints;

h)   The right of Evon Williams to have privacy of her body in treatment and in caring for her personal needs;

i)   The right to prompt efforts by the facility to resolve resident grievances, including grievances with respect to resident care and the behavior of other residents;

j)   The right to participate in social, religious, and community activities;

k)   The right to the obligation of the facility to keep full records of the admissions and discharges of Evon Williams and her medical and general health status, including:

1)   medical records;

2)   personal and social history;

3)   individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

4)   making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed; and

l)   The right to be treated courteously, fairly, and with the fullest measure of dignity.

62.   The aforementioned infringement and deprivation of the rights of Evon Williams were the result of the Nursing Home Defendants' failure to do that which a reasonably careful person would do under similar circumstances.

63.   As a result of the aforementioned violations, the Plaintiff, pursuant to Ark. Code Ann. § 20-10-1209(a)(4), is entitled to recover actual damages against the licensee of the facility. The Plaintiff asserts a claim for judgment for actual damages against the Nursing Home Defendants, including, but not limited to, medical expenses, physical pain and suffering, mental

anguish and loss of dignity, in an amount to be determined by the jury and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

64.    The infringement or deprivation of the resident's rights of Evon Williams by the Nursing Home Defendants was willful, wanton, gross, flagrant, reckless, or consciously indifferent.  Pursuant to Ark. Code Ann. § 20-10-1209(c), Plaintiff is entitled to recover punitive damages against the licensee of the facility.

## Count Five: Breach of the Provider Agreement

65.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

66.    Upon becoming a resident of Courtyard Rehabilitation and Health Center, LLC, Evon Williams, as a Medicare and/or Medicaid recipient, became a third-party beneficiary of the contract or provider agreement between the Nursing Home Defendants and the state and federal governments, an example of which is attached as **Exhibit B.**

67.    For consideration duly paid by Evon Williams, or on her behalf, the Nursing Home Defendants agreed to provide residents with personal and custodial care and professional nursing care in compliance with the requirements set forth in the provider agreements, as well as the minimum standards of care imposed by applicable law including the statutes and regulations set out herein.  In addition, by entering into the agreement, the Nursing Home Defendants promised to "comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State."  The Nursing Home Defendants further agreed that "the rights and privileges of the

residents {were} of primary concern to the parties" and covenanted to "protect and preserve" the rights of the residents. The parties to the contract agreed "that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement."

68.    As the name implies, the provider agreement exists to pay for and provide for resident, personal, or custodial care and professional nursing care. The provider agreements between the Nursing Home Defendants and the state and federal government were clearly intended to benefit the residents of Courtyard Rehabilitation and Health Center, LLC, including Evon Williams.

69.    The Nursing Home Defendants breached the provider agreement and committed multiple acts of nonfeasance in failing to provide the care, goods, and services to industry standards, as required by law and as agreed, including but not limited to:

    a)    Nonfeasance in failing to provide, as promised, the care and services for Evon Williams to attain or maintain her highest practicable physical, mental, and psychosocial well-being, in accordance with a comprehensive assessment and plan of care;

    b)    Nonfeasance in failing to provide, as promised, dietary services, including special diets, supplemental feedings, special delivery preparation, assistance, and equipment required for preparing and dispensing oral feedings and special feeding devices;

    c)    Nonfeasance in failing to provide, as promised, personal or custodial services and nursing care;

    d)    Nonfeasance in failing, as promised, to implement policies and procedures so as to prevent infringement or deprivation of Evon Williams' rights as a resident of a long term care facility;

    e)    Nonfeasance in failing to provide, as promised, assistance to Evon Williams in developing and carrying out a plan of care;

  f)  Nonfeasance in failing to comply, as promised, with protections, duties and obligations imposed by applicable state and federal statutes and regulations as alleged herein; and

  g)  Nonfeasance in failing to staff Courtyard Rehabilitation and Health Center, LLC with sufficient personnel to adequately meet the needs of Evon Williams, failing to comply with the rules and regulations promulgated by the state and federal governments, and in failing to provide staff qualified to meet the needs of the residents.

70. As a result of the Nursing Home Defendants' breach of the provider agreement, Plaintiff asserts a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment, in an amount that exceeds that required for federal court jurisdiction in diversity of citizenship cases.

71. The Nursing Home Defendants are also liable for all consequential damages, because the Nursing Home Defendants knew, or should have known, that breaches of the provider agreement would result in consequential damages to Evon Williams, and, under the circumstances, the Nursing Home Defendants should have understood that it had agreed to assume responsibility for any consequential damages caused by their breaches of the provider agreement.

72. Plaintiff seeks judgment for all foreseeable consequential damages, which flowed naturally from the failure of the Nursing Home Defendants to provide the care, goods, and services promised under the provider agreement, including but not limited to medical expenses, pain and suffering, and mental anguish.

73. Plaintiff is entitled to seek punitive damages for breach of contract, because the Nursing Home Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the provider agreement would naturally and

probably result in injury or damage, yet the Nursing Home Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

74.    Plaintiff, for good cause, is unable to attach a copy of the actual provider agreement upon which this claim is based, because it is in the possession of the Nursing Home Defendants.

## Count Six: Deceptive Trade Practices

75.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

76.    At all times pertinent to this cause of action, Evon Williams was an "elder person" as defined by the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-201(a). As an "elder person" within the meaning of the Deceptive Trade Practices Act, the Plaintiff has a private cause of action to recover actual damages, punitive damages, and reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-204.

77.    At all relevant times, the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. 4-88-107(a) provides that it is unlawful to:

    a)    Knowingly take advantage of a consumer who is reasonably unable to protect his or her interest because of:

        i.    Physical infirmity; or

        ii.    A similar factor; and

    b)    Engage in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

78.    Ark. Code Ann. 4-88-108 provides that, when utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, it shall be unlawful for any

person to (1) act, use or employ any deception, fraud or false pretense, or (2) conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression, or omission.

79.     The conduct of the Nursing Home Defendants, as described herein, constitutes a deceptive practice in violation of the Deceptive Trade Practices Act.  The Nursing Home Defendants isolated the Protection of Long Term Care Facilities Residents' Act and federal law, which is a per se violation of the Deceptive Trade Practices Act.  The Nursing Home Defendants also failed to inform Plaintiff in the Nursing Home Defendants' standard admission agreement that the facility routinely does not meet minimum staffing requirements imposed by state and federal law.

80.     The Nursing Home Defendants engaged in an unconscionable, false, and/or deceptive act or practice in business, commerce and/or trade by marketing themselves and holding themselves out to the public and Evon Williams as being able to meet the needs of elder residents of Courtyard Rehabilitation and Health Center, LLC.  The Nursing Home Defendants profited greatly as a result of their deceptive trade practices, but the Nursing Home Defendants were aware that Courtyard Rehabilitation and Health Center, LLC could not meet the needs of its residents, including Evon Williams.

81.     As a direct and proximate result of the Nursing Home Defendants' wrongful conduct, Plaintiff has suffered actual damages.

## CAUSES OF ACTION AGAINST THE ADMINISTRATOR DEFENDANT
### Factual Allegations

82.     Plaintiff adopts and incorporates all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

83.     Upon information and belief, Kimberly Hamilton was the administrator at Courtyard Rehabilitation and Health Center, LLC during the residency of Evon Williams.

84.     As administrator of Courtyard Rehabilitation and Health Center, LLC, Kimberly Hamilton was responsible for ensuring that the facility complied with all state and federal regulations related to nursing facilities.  Kimberly Hamilton had a duty to administer the facility in a manner that enabled it to use resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychological well-being of each resident.  The nursing facility, under the leadership of its administrator, is also required to operate and provide services in compliance with all applicable federal, state, and local laws, regulations, and codes, and with accepted professional standards and principles that apply to professionals providing services in such facilities.  In addition, as a member of the facility's governing body, Kimberly Hamilton had a duty to promulgate and implement policies and procedures for the operation and management of Courtyard Rehabilitation and Health Center, LLC.  Defendant Kimberly Hamilton breached the duty of care she owed to Evon Williams.

## Negligence

85.     Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

86.     Kimberly Hamilton owed a duty to the residents, including Evon Williams, to provide services as a reasonable administrator within accepted standards for a nursing home administrator.

87.     The administrator Defendant breached the duties owed to the residents of Courtyard Rehabilitation and Health Center, LLC including Evon Williams, by failing to supervise nurses and nurses' aides and failing to hire sufficient nurses and nurses' aides, and as

such, the nurses and nurses' aides were unable to provide Evon Williams the care she required. The negligence of the Administrator Defendant includes, but is not limited to, the following acts and omissions:

a) The failure to ensure that abuse prevention policies were developed and implemented to include analysis of the physical environment and the assessment, care planning and monitoring of residents with needs and behaviors that might lead to conflict;

b) Failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Evon Williams received appropriate nursing care;

c) Failure to ensure that Evon Williams was provided with basic necessary care and supervision;

d) Failure to adequately hire, train, supervise, and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, nurse assistants and other personnel in said facility to assure that Evon Williams received care, treatment, and services in accordance with state and federal law;

e) Failure to assign nursing personnel at Courtyard Rehabilitation and Health Center, LLC duties consistent with their education and experience based on:

1) Evon Williams' medical history, condition, nursing, and rehabilitative needs;

2) The characteristics of the resident population residing in the area of the facility where Evon Williams was a resident; and

3) Nursing skills needed to provide care to such resident population;

f) The failure to provide sufficient numbers of qualified personnel to ensure that Evon Williams was provided with a safe environment and was protected from abuse and mistreatment by the correct use of reasonable safety measures;

g)   The failure to properly in-service and orient employees to pertinent resident care needs to maintain the safety of residents;

h)   The failure to protect Evon Williams from abuse and neglect; and

i)   The failure to provide adequate supervision to the nursing staff so as to ensure that Evon Williams received adequate and proper care.

88.   A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in devastating injuries to Evon Williams.

89.   As a direct and proximate result of the Administrator Defendant's negligent conduct, Plaintiff asserts a claim for judgment for all compensatory damages against the Administrator Defendant, including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disfigurement, disability, degradation, loss of personal dignity and emotional distress in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### Prayer For Relief

WHEREFORE, Plaintiff, Shirley Johnson, as Special Administratrix of the Estate of Evon Williams, prays for judgment against Defendants as follows:

1.   For damages in an amount adequate to compensate Plaintiff for the injuries and damages sustained and exceeding that required by federal court jurisdiction in diversity of citizenship cases.

2.   For all general and special damages caused by the alleged conduct of Defendants.

3.   For the costs of litigating this case.

4.   For prejudgment and post judgment interest.

5.    For attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and Ark. Code Ann. § 4-88-204.

6.    For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to Evon Williams and to deter Defendants and others from repeating such atrocities.

7.    For all other relief to which Plaintiff is entitled.


Respectfully submitted,


By:    _____
       Kyle P. Ludwig, Ark. Bar No. 2012089
       Ludwig Law Firm PLC
       1 Three Rivers Drive
       Little Rock, AR 72223
       Telephone (501) 868-7500

## IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS
### PROBATE DIVISION

IN THE MATTER OF THE ESTATE
OF EVON WILLIAMS, DECEASED

NO. PR-2014-236-6

### LETTERS OF SPECIAL ADMINISTRATION

BE IT KNOWN:

That Shirley Johnson whose address is 5789 Smackover Hwy, Smackover, Union County, Arkansas 71762, having been duly appointed Special Administratrix of the Estate of Evon Williams, deceased, who died on or about March 13, 2013, and having qualified as such Special Administratrix, is hereby authorized to act as such Special Administratrix for and in behalf of the Estate and to take possession of the property thereof as authorized by law and to function as a Special Administratrix subject to the statutory duties relating to that position.

ISSUED this _12th_ day of _January_, 2015.

SHANNON PHILLIPS, County Clerk

UNION COUNTY CLERK
PROBATE DIVISION



CONTRACT
TO PARTICIPATE IN THE ARKANSAS NURSING HOME PROGRAM
ADMINISTERED BY THE DIVISION OF ECONOMIC AND MEDICAL SERVICES
OFFICE OF LONG TERM CARE
UNDER TITLE XIX (MEDICAID)

This __Facility__ agreement made and entered into this the _____ day of _____
(to be completed by DMS)                                    (to be completed by DMS)
by and between _____Text_____ hereinafter called Provider, and
(to be completed by DMS)
the Department of Economic and Medical Services, Office of Long Term Care hereinafter called State.

WITNESSTH:

I.   Provider agrees that its responsibilities hereunder shall be as follows:

    A.   To keep all records, as set forth in applicable Federal and/or State regulations, and Long Term Care Provider Manuals, and any duly promulgated changes in or additions thereto, and to fully disclose the extent of all services provided to individuals receiving assistance under the State Plan.

    B.   To make available for inspection all records herein specified to satisfy audit requirements under the program; to furnish all such records for audit conduction periodically by State or its designated agents and/or representatives of the Department of Human Services, and the Department of Health and Human Services of the United States of America or its designees or representatives. For all Medicaid recipients these records shall include, but not necessarily be limited to those records as defined in Section A above.

    C.   Provider shall at all times provide State access to the facility, residents, and resident records. Provider expressly agrees not to hinder, impede, or otherwise restrict State from carrying out its official duties, and expressly agrees to reasonably assist State in carrying out its official duties. In this context, "official duties" include inspections, surveys and investigations and reviews as prescribed by State and Federal laws, rules and regulations, and shall allow "observation and recordings made and conducted relative to long term care facilities, long term care residents, and records of or possessed by facility and/or residents. 'Observation' includes the right and ability to move in or around the interior and/or exterior, including resident rooms of a long term care facility, unaccompanied (except upon request if the inspector[s]) at any time. 'Recordings' include photostatic copies, notes, drawings, and photographs (whether still or motion, in accordance with Section 2 of Ark. Act 33 of 1989), and sound recordings."

    D.   To accept only residents who have met the requirements of the duly promulgated Pre-Admission Screening Program and for whom the facility can provide all required and necessary services. Provider specifically herein agrees to insure availability of all medications prescribed by the resident's physician.

    E.   To provide all services without discrimination on the grounds of race, color, national origin, or physical or mental disability within the provisions of Title VI of the Federal Civil Rights Act, and Section 504 of the Rehabilitation Act of 1973. Provider agrees herewith that it has been furnished with a copy of the LTC Provider Manual, and shall be bound by all provisions thereof, including any and all changes and/or additions thereto.

    F.   To comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State.

    G.   To meet all requirements of applicable Life Safety Code and all State Fire and Safety Codes.

    H.   Provider will not transfer or discharge any recipient without a minimum of 30 days advance notice to the individual or a responsible person. Provider may transfer or discharge a Medicaid recipient under the following circumstances:

        1.   The transfer or discharge is necessary to meet the resident's welfare and the resident's welfare cannot be met in the facility;

        2.   The transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility;

        3.   The safety of the individuals in the facility is endangered;

        4.   The health of individuals in the facility would otherwise be endangered;

        5.   The resident has failed, after reasonable and appropriate notice, to pay (or to have paid under Title XIX or Title XVIII on the resident's behalf an allowable charge imposed by the facility for an item or service requested by the resident and for which a charge may be imposed consistent with federal and state laws and regulations; or

        6.   The facility ceases to operate.

        The notice of transfer or discharge must be made at least 30 days in advance of the resident's transfer or discharge except:

        a.   In a case described in item H(3) or H(4) above;

        b.   In a case described in item H(2) above where the resident's health improves sufficiently to allow for a more immediate transfer or discharge;

        c.   In a case described in item H(1) above where a more immediate transfer or discharge is necessitated by the resident's urgent medical needs; or

        d.   In a case where the resident has not resided in the facility for 30 days.

    I.   Provider shall give 30 day notice to the State prior to any change of ownership including a change w... or provides for the assumptions of existing liabilities by the new owner.



EXHIBIT
B

J.   To bill State (Medicaid) only after the service has been provided.

K.   To accept Medicaid reimbursement rates determined by the State as full payment for all Medicaid eligible care and services required by the classification of each resident and rendered by the provider, and make no additional charges to the resident, or to accept any additional payment from the resident, relatives, or responsible parties for that service which is covered under the Medicaid Program.

L.   To promptly refund to the resident or responsible party any unused portion of recipient applied income collected in advance and not owed due to death, discharge or transfer. Recipient income is to be prorated on a per diem basis according to the number of days in the month.

M.   To promptly refund to a resident or other responsible person any deposit or entrance fee collected while awaiting approval for Medicaid eligibility to the extent those days are covered by Medicaid payments.

N.   To provide all services and specific items as defined in the Medical Assistance Reasonable Cost Related Reimbursement Manual for Long Term Care Facilities (MARCRRM-LTCF), or any additions thereto or subsequent manuals. Receipt of Medicaid per diem reimbursement rates is considered payment in full for services and items included in the MARCRRM.

O.   To accept assignment and file a claim in a timely and proper manner with all third party sources, and if said claim is collected from a third party, to reimburse Medicaid up to the amount Medicaid paid for said services.

P.   The $30 Personal Needs Allowance which is provided for by the Medicaid Program for personal expenditures of a resident cannot and shall not be used for any other purpose except as authorized in writing by the resident or responsible party.

Q.   To comply with all State and/or Federal regulations pertaining to resident personal funds and to provide the State access to patient account records or any other financial records maintained by the provider for benefit of the patient. The new owner must specify in writing which owner will be responsible for recipient Medicaid claims and facility account receivable balances resulting from dates of service prior to the ownership change.

Further Provider agrees that it will not prevent or interfere with the individual or responsible person, or the Office of Long Term Care in the transfer or discharging of a patient when same is appropriate.

II.   The State agrees that it shall have the following responsibilities hereunder:

A.   To make timely payments to Provider for the appropriate Medicaid services provided the eligible Medicaid recipients in accordance with the terms of the LTC Provider Manual or other appropriate regulations and procedures previously mentioned herein.

B.   To notify Provider of any changes of rules or regulations to be followed hereunder as promptly as is practicable at all times.

C.   To safeguard the confidentiality of any Medicaid records maintained for the State, its agents, and/or fiscal intermediary as specified in Federal and State regulations.

III.   Mutual Covenants, Duties, Responsibilities, and Undertakings

A.   State and Provider mutually agree to comply with all Federal and State laws, rules and regulations.

B.   State and Provider agree that the rights and privileges of the residents are of primary concern to the parties and the parties expressly agree and covenant to protect and preserve those rights and privileges and that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement and may result in immediate termination of this agreement without recourse.

C.   State and Provider agree and covenant that this written instrument constitutes the entirety of the agreement between both parties and no statement or representations not reduced to writing or incorporated herein by express reference shall be binding upon the parties and such statements or representations not incorporated herein by express reference or not contained herein shall constitute no part of this agreement.

IV.   This contract may be terminated in accordance with the following provisions:

A.   This contract may be terminated by either party by giving 30 days written notice to the other party.

B.   This contract may be terminated immediately by State for the following reasons:

1.   Federal sanction of Provider.

2.   Change of ownership.

3.   Violation of any provision herein contained.

4.   In accordance with termination procedures as set out in appropriate Federal and/or State regulations or rules by which Provider is bound hereunder.

| Provider | Division of Economic and Medical Services Office of Long Term Care |
|---|---|
| By: _____ (Signature) | By: _____ (Signature) |
| Name: _____ (Type Name) | Name: Carol Shockley (Type Name) |
| Title: Administrator | Title: Director, LTC |
| Date: _____ | Date: _____ |